**In re MESSERSCHMITT BOLKOW BLOHM GmbH, Petitioner.**

No. 84–1877.

United States Court of Appeals, Fifth Circuit.

April 18, 1985.

---

Strasburger & Price, Royal H. Brin, Jr., Charles M. Hosch, Dallas, Tex., for appellant.

Michael Slack, John Howie, Dallas, Tex., Munson, Munson, Hynds, Gordon & Pierce, J. Don Gordon, Peter K. Munson, Sherman, Tex., Johnson, Bromberg & Leeds, Charles L. Perry, Dallas, Tex., for appellee.

Before RUBIN, RANDALL and TATE, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

■ Three occupants of a helicopter died when the helicopter crashed in April 1982 near McKinney, Texas. Their wrongful-death and survival-statute beneficiaries sued the manufacturer of the helicopter, Messerschmitt Bolkow Blohm GmbH (Messerschmitt), a foreign corporation, and the United States distributor of Messerschmitt's helicopters, MBB Helicopter Corporation (MBB), a Delaware and Pennsylvania corporation which is a wholly-owned subsidiary of Messerschmitt, in federal district court in Texas. The jurisdiction of the district court over both defendants is conceded. The district court ordered Messerschmitt: (1) to respond to requests for the production of documents by producing in the United States documents in its possession and physically located in Germany; and (2) to produce for depositions in the United States at a reasonable time in advance of trial the persons Messerschmitt may call as expert witnesses at the time of trial. The expert witnesses are German employees of Messerschmitt residing in Germany. The court has issued no subpoena directing the witnesses to appear. Messerschmitt seeks mandamus directing the district court to revoke the discovery orders and requiring instead that discovery be conducted in accordance with the procedures set forth in the Multilateral Convention on the Taking of Evidence Abroad in Civil and Commercial Matters (the Hague Convention).[1] Guided by this court's opin-

---

1. Done March 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444 (Hague Convention) (entered into force for the United States October 7, 1972). The Convention was initially adopted to provide a uniform system of discovery in foreign jurisdictions. It was based on the framework established by the Multilateral Convention on the Service Abroad of Judicial and Extrajudicial

ion in *In Re Anschuetz and Company v. Compania Gijonesa de Navegacion,*[2] decided after the district court entered its orders, we hold that the Convention does not apply to the discovery sought here because the proceedings are in a United States court, involve only parties subject to that court's jurisdiction, and ultimately concern only matters that are to occur in the court's jurisdiction, not abroad. We discuss the two discovery problems here involved separately, applying the principles set forth in that decision.

## I. Document Discovery

In *Anschuetz,*[3] we held that the Federal Rules of Civil Procedure, not the Hague Convention, normally govern the discovery of documents from foreign parties subject to the jurisdiction of a United States court, even though those documents are physically located in the territory of a foreign signatory of the Hague Convention. We stated that such discovery should be considered as taking place in the United States and, therefore, is not governed by the Hague Convention.[4] We reasoned that the Hague Convention was " 'not intended to protect foreign parties, over whom an American court properly has jurisdiction, from the normal range of pretrial discovery available under the Federal Rules of Civil Procedure.' "[5] Were the Convention viewed as the exclusive procedure for foreign discovery of foreign parties, these parties would be given an unfair evidentiary advantage over their American opponents. The foreign party would have full dis-

covery of his opponent under the Federal Rules of Civil Procedure, while the American litigant would be forced to rely upon Hague Convention procedures. Should the foreign government prove unwilling to carry out discovery requests under the Convention, the American litigant would be unable to prepare its case against the fully-prepared foreign party.[6]

We stated, however, that United States courts should not intrude unnecessarily into matters of concern to other nations. A district court should consider whether, as a matter of international comity, the parties should be required to proceed under the Hague Convention before discovery is compelled under the Federal Rules of Civil Procedure.[7]

In response to an invitation by the *Anschuetz* panel, the Federal Republic of Germany filed a brief stating that *"[c]ompliance in Germany* with the order of the U.S. District Court *mandating ... the production of documents located in ... Germany,* would be a violation of German sovereignty unless the order is transmitted and executed by the method of Letter of Request under the Evidence Convention."[8] The United States Department of Justice also filed a brief urging the court to make a careful comity analysis before departing from Hague Convention procedures. While the *Anschuetz* panel left this comity analysis to the district court on remand, we choose to expedite this litigation by weighing the competing national interests and deciding the legal issue now.[9]

Documents in Civil and Commercial Matters, done November 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638. West Germany participated effective June 1979.

The following states are parties to the Convention: Barbados, Czechoslovakia, Denmark, Finland, France, Germany, Israel, Italy, Luxembourg, the Netherlands, Norway, Portugal, Singapore, Sweden, the United Kingdom, and the United States.

**2.** 754 F.2d 602 (5th Cir.1985).

**3.** *Supra* note 2.

**4.** *In Re Anschuetz, supra* note 2 at 611, 615.

**5.** *In Re Anschuetz, supra* note 2 at 611, *quoting Graco v. Kremlin, Inc.,* 101 F.R.D. 503, 521 (N.D. Ill.1984).

**6.** *In re Anschuetz, supra* note 2 at 606.

**7.** *In re Anschuetz, supra* note 2 at 614.

**8.** (Emphasis added.)

**9.** This suit was filed more than two years ago and remains at the pre-trial discovery stage.

"Comity" [10] requires us to weigh Germany's interest in maintaining control over its judicial system against the American interest in obtaining full pretrial discovery of information relevant to pending litigation in the United States. American discovery procedures may indeed inconvenience the German civilian judicial system. Our pretrial procedures for broad disclosure of documents and depositions of witnesses are alien to a civilian system, in which discovery is controlled by judicial officers and restricted in scope.[11]

Discovery, under the Federal Rules, of documents located in Germany need not directly involve German judicial officers; but Germany is legitimately concerned, as evidenced by its brief to the *Anschuetz* panel, lest documents within its borders and owned by its nationals be disclosed in foreign procedures.[12]

The American litigants' interest in promptly obtaining the documents and deposition testimony necessary to prepare for complex litigation in an American court must also be considered. The district court's order does not require any governmental action in Germany, any appearance in Germany of foreign attorneys, or any proceedings in Germany. It requires only that a party admittedly subject to the personal jurisdiction of a United States court produce documents in the United States. The order for production of documents, therefore, appears to balance appropriately the considerations involved.

## II. Expert Witnesses

In *Anschuetz*, we held that, when a foreign corporation is subject to the personal jurisdicuon of a United States court, the district court may order the taking of its employees' depositions in the United States even though those employees reside within a foreign signatory of the Hague Convention.[13] Because the depositions will in fact be taken in the United States, they are not governed by the Hague Convention.

The American plaintiffs seek only to depose in the United States in advance of trial those employees whom the foreign corporation, Messerschmitt, intends to call as expert witnesses at the trial. Were the Hague Convention the plaintiffs' exclusive remedy, and were they unable to obtain the employees' depositions through Convention procedures, the foreign corporation would be able to present expert witnesses without affording the plaintiffs the opportunity to depose those witnesses before trial. The Convention was not intended to give foreign litigants this kind of advantage in American courts.

The *Anschuetz* panel stated that, in connection with depositions, as with document discovery, a district court should consider whether comity requires that the depositions first be sought under Hague Convention procedures.[14] In its *Anschuetz* brief, Germany stated, "Compliance in Germany with [an] order of the U.S. District Court *mandating the taking of oral depositions*

---

10. *See Hilton v. Guyot,* 159 U.S. 113, 163–64, 16 S.Ct. 139, 143, 40 L.Ed. 95, 108 (1895); *Laker Airways v. Sabena, Belgian World Airlines,* 731 F.2d 909, 937 (D.C.Cir.1984); *Volkswagenwerk v. Superior Court,* 123 Cal.App.3d 840, 857, 176 Cal.Rptr. 874, 884 (Cal.App.1981).

11. *E.g.,* Shemanski, *Obtaining Evidence in the Federal Republic of Germany—the Impact of the Hague Evidence Convention on German-American Judicial Cooperation,* 17 Int'l Law 465 (1983); Comment, *The Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters: The Exclusive and Mandatory Procedures for Discovery Abroad,* 132 U.Pa.L.Rev. 1461, 1464 (1984).

12. *E.g.,* Comment, *supra* note 11, 132 U.Pa.L. Rev. at 1464–65 ("[I]n civil law countries an attempt by a private party to gather evidence for

use in a proceeding abroad may be an illegal usurpation of a 'public-judicial' function, and considered an affront to that nation's 'judicial sovereignty.' ").

13. *In re Anschuetz, supra* note 2 at 615.

14. *In re Anschuetz, supra* note 2 at 614. Taking the employees' depositions in Germany under the Hague Convention would require either a voluntary appearance before a United States diplomatic officer or consular agent (Hague Convention, *supra* note 1, Arts. 15, 16), the assistance of Germany to obtain compulsory attendance (Convention Art. 18), or the services of a commissioner appointed with the consent of Germany (Convention Art. 17).

*in Kiel, Germany* ... would be a violation of German sovereignty unless the order is transmitted and executed ... under the [Hague] Evidence Convention." [15] The district court order that German nationals be produced for deposition in the United States might concern Germany, but it does not involve alien procedures on German soil, is directed to the party-defendant and not the foreign witnesses, and is enforceable only by procedures and sanctions directed to a party to the litigation in the forum court. The order appears to be a complement to the measures for trial preparation expressly sanctioned by Federal Rule of Civil Procedure 26(b)(4), the applicable text of which is set forth in the footnote.[16] The order therefore does not implicate the comity considerations addressed in *Anschuetz.*[17]

Were the witnesses to be deposed in Germany, other considerations would be applicable. The Hague Convention provides convenient procedures for taking witnesses' depositions in Germany without unnecessarily offending German sovereignty. But what would be appropriate for depositions on foreign soil need not be determined here. If within a reasonable period of time prior to the trial date, to be fixed by the district court, Messerschmitt does not arrange for the appearance of its employee-expert witnesses for depositions in the United States, the district court may invoke any of the sanctions available by virtue of the Federal Rules to compel compliance with its orders, including the exclusion of the employees' testimony at trial.

The district court may require that the production both of documents and witnesses for deposition be completed sufficiently in advance of trial to permit adequate pretrial preparation.

■ The plaintiffs have urged us to decide this case on the basis that Messerschmitt's creation of a subsidiary to operate under the laws of the United States waives its rights under the Hague Convention. They do not contend that MBB is either a sham corporation or the artificial alter-ego of Messerschmitt. Counsel for plaintiffs cites no authority and gives no reason for disregarding the independent corporate existence of the subsidiary or treating its creation as a waiver of the foreign corporation's treaty rights. *Cooper Industries, Inc. v. British Aerospace* [18] is inapposite, for its rationale is that a domestic corporation "cannot be allowed to shield crucial documents from discovery ... merely by storing them with its affiliate abroad. Nor can it shield documents by destroying its own copies and relying on customary access to copies maintained by its affiliate abroad." [19] There is not even a suggestion here, let alone evidence, that either MBB or Messerschmitt has engaged in such tactics. The *Cooper* court went on to hold that the documents were within the domestic defendant's custody because that defendant sold and serviced planes to which the documents, mostly service manuals and blueprints, related. The record lacks evidence from which we might conclude that MBB has custody or control of the documents. To the extent the Hague Convention might be applicable to future discovery proceedings under the

---

**15.** (Emphasis added.)

**16.** (4) *Trial Preparation: Experts.* Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (b)(1) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

(A)(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opin-

ions to which the expert is expected to testify and a summary of the grounds for each opinion. (ii) Upon motion, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions, pursuant to subdivision (b)(4)(C) of this rule, concerning fees and expenses as the court may deem appropriate.

**17.** *See In re Anschuetz, supra* note 2 at 615.

**18.** 102 F.R.D. 918 (S.D.N.Y.1984).

**19.** *Id.* at 920.

principles of *Anschuetz,* it was not waived by creation of the subsidiary.

Finding nothing in the district court orders that transgresses *Anschuetz,* we DENY the petition for mandamus.